# EXHIBIT A

State Court Register of Action

# Register of Actions

| | | |
|---|---|---|
| Filed by Plaintiff/Petitioner | **Case Number:** 2026CV031209 | **Division:** 275 |
| Filed by Defendant/Respondent | **Case Type:** Declaratory Judgment | **Judicial Officer:** Kandace Gerdes |
| Filed by Court | **Case Caption:** Boulder Valley Iom LLC v. Rcymt Hosp And Medical Serv Inc | **Court Location:** Denver County - District |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 06/08/2026 9:43 AM | Kandace Gerdes | Denver County - District | N/A | Order | ORDER TO SHOW CAUSE | Public |
| 5F9CDC08F5E78 | 04/14/2026 7:37 AM | Brian Allen Williamson Esq. | Callagy Law PC | Boulder Valley Iom LLC | Civil Case Cover Sheet | District Court Civil (CV) Case Cover Sheet | Public |
| | | | | | Summons | District Court Civil Summons | Public |
| N/A (Details) | 04/08/2026 11:15 AM | Kandace Gerdes | Denver County - District | N/A | Order | PRE-TRIAL ORDER | Public |
| N/A (Details) | 04/08/2026 11:14 AM | Kandace Gerdes | Denver County - District | N/A | Order | DELAY REDUCTION ORDER | Public |
| 73C8201D5D22C | 04/03/2026 3:20 PM | Brian Allen Williamson Esq. | Callagy Law PC | Boulder Valley Iom LLC | Complaint w/Jury Demand | Plaintiff's Complaint w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Plaintiff's Complaint | Protected |

# Party Information

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| Anthem Blue Cross And Blue Shield | DBA | Active | N/A |
| Boulder Valley Iom LLC | Plaintiff | Active | BRIAN ALLEN WILLIAMSON (Callagy Law PC) |
| Rcymt Hosp And Medical Serv Inc | Defendant | Active | N/A |

# EXHIBIT A-1

Complaint

| | |
|---|---|
| DENVER DISTRICT COURT<br>1437 Bannock Street<br>Denver, CO 80202<br>United States<br>(303) 606-2300 | DATE FILED<br>April 30, 2026 PM<br>▲ COURT USE ONLY ▲<br>FILING ID: 73C8201D5D22C<br>CASE NUMBER: 2026CV31209 |
| Plaintiff: **BOULDER VALLEY IOM LLC**<br><br>v.<br><br><br>Defendant: **ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD** | Case No:<br><br>Division:<br><br>Courtroom: |
| Attorneys for Plaintiff:<br><br>*Brian A. Williamson (CO Bar No. 336547)<br>Callagy Law<br>2550 W. Union Hills Ave., Ste. 350-341<br>Phoenix, AZ 85027<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(201) 261-1700<br>(201) 549-8408 (facsimile)<br>bwilliamson@callagylaw.com | |
| **PLAINTIFF'S COMPLAINT** | |

Boulder Valley IOM LLC ("Plaintiff"), by and through its attorneys, Callagy Law, P.C., submits this Complaint against Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Defendant"), and alleges as follows:

1

**PRELIMINARY STATEMENT**

1.     This action arises from Defendant's repeated and unjustified wrongful retention of funds belonging to the Plaintiff, unreasonable payment practices, and bad faith under state law related to prompt payment, fair trade practices, and fair dealing between insurance carriers and medical providers.

2.     Plaintiff is a licensed medical provider that rendered medically necessary services to individuals covered by health benefit plans administered and/or insured by Defendant. Plaintiff timely submitted claims and supporting documentation. Where Defendant issued payment determinations that Plaintiff reasonably disputed due to considerable underpayment, Plaintiff engaged in the required open negotiation process and then initiated arbitration in the federal Independent Dispute Resolution process ("IDR") as contemplated by the federal No Surprises Act ("NSA").

3.     Plaintiff prevailed in multiple IDR proceedings. Independent dispute resolution entities issued determinations identifying the additional amounts owed for specific services and dates of service. Those determinations, and the payment obligations arising from them, are final and binding as to the amounts due.

4.     Despite the binding nature of these determinations, Defendant nevertheless has failed and refused to timely remit payment on multiple IDR determinations and related claim obligations, despite repeated notices and demands.

5.     This case is therefore not a dispute about whether services were provided or whether the IDR process occurred. Rather, it concerns Defendant's withholding and

2

retention of monies owed – after Plaintiff delivered care, complied with required processes, and obtained determinations confirming the amounts due.

6. Defendant's nonpayment and delay have caused foreseeable harm to Plaintiff, including loss of funds necessary to operate a clinical practice, increased administrative and collection costs, and the time-value loss of money that should have been paid when due. Defendant's behavior has also unjustly enriched Defendant at the expense of Plaintiff.

7. Separately and additionally, Defendant's failure to timely pay clean claims and other amounts due implicates state prompt payment requirements. In Colorado, health insurance companies ("carriers") are subject to prompt payment requirements and interest obligations on overdue claims under statutes and implementing regulations, including C.R.S. § 10-16-106.5, including provisions requiring interest on late payments.

8. Plaintiff references the NSA and the IDR determinations solely as factual background and evidence of the amounts owed, and seeks relief under applicable state law for Defendant's wrongful retention of funds and unreasonable payment practices, including restitution and interest.

9. Plaintiff's claims include, among other causes of action, unjust enrichment and related equitable remedies, because Defendant accepted the benefits of Plaintiff's services to Defendant's members while retaining monies that, in equity and good conscience, should be paid to Plaintiff.

10. Plaintiff also asserts state-law claims arising from Defendant's failure to pay amounts due in good faith and within required timeframes, including claims based on

3

breach of contract and/or applicable plan terms (as enforceable by Plaintiff through assignment and/or as an intended beneficiary, where applicable), breach of the implied covenant of good faith and fair dealing, quantum meruit, and statutory prompt pay relief (including interest).

11.   Plaintiff seeks relief scaled to the actual misconduct and harm alleged:

   a.   payment of all unpaid amounts determined to be owed;

   b.   restitution and disgorgement of wrongfully retained funds;

   c.   statutory interest and other amounts mandated by state prompt pay law;

   d.   prejudgment and post-judgment interest;

   e.   reasonable attorneys' fees and costs where authorized; and

   f.   declaratory relief clarifying Defendant's payment obligations under applicable state law.

   g.   Punitive damages for this intentional and flagrant failure to pay Plaintiff money rightfully owed to Plaintiff.

12.   In short, Plaintiff rendered medically necessary care, complied with all required processes, was substantially underpaid by Defendant, obtained determinations confirming the amounts owed, and repeatedly demanded payment. Defendant has intentionally failed to timely remit those amounts, constituting a blatant disregard of its legal obligations under state law.

**PARTIES**

13.   Boulder Valley IOM LLC is a licensed Medical Provider organized and existing under the laws of Colorado, 5023 W 120th Ave PMB 236, Broomfield, CO 80020,

4

US ("Plaintiff"). Plaintiff rendered medically necessary healthcare services to individuals enrolled in or covered by health benefit plans issued, administered, and/or otherwise managed by Defendant.

14.     At all relevant times, Plaintiff was duly licensed and authorized to provide the healthcare services at issue, and provided such services in the ordinary course of its business and consistent with applicable professional standards.

15.     Plaintiff submitted claims and supporting documentation for reimbursement for the services at issue in accordance with applicable plan requirements and Defendant's claims submission procedures, including submission of clean claims where applicable.

16.     Upon information and belief, Rocky Mountain Hospital and Medical Service, Inc., d/b/a Anthem Blue Cross and Blue Shield, is a corporation organized and existing under the laws of the State of Colorado, with its headquarters and principal place of business located at 700 Broadway, Denver, Colorado 80203 ("Defendant"). Upon information and belief, Defendant is engaged in the business of issuing, underwriting, administering, managing, and/or paying claims under health benefit plans covering members who received healthcare services from Plaintiff.

17.     At all relevant times, Defendant acted directly and/or through its agents, affiliates, contractors, and representatives in processing, evaluating, negotiating, and paying (or failing to pay) the claims, reimbursements, and amounts at issue in this action.

18.     Plaintiff is informed and believes, and based thereon alleges, that Defendant is responsible for the payment obligations at issue, including amounts owed following completion of the NSA open negotiation and IDR processes relating to certain claims, as

5

well as amounts due under applicable state law governing timely payment of claims and interest on overdue payments.

19.     The identities, roles, and responsibilities of additional persons and entities involved in the acts and omissions described herein are currently unknown to Plaintiff and will be added as appropriate upon further investigation and discovery.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to its general jurisdiction and authority to adjudicate civil actions seeking legal and equitable relief, including claims for unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, statutory prompt payment relief (including interest), and declaratory relief.

21.     This Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado and the Colorado long-arm statute, C.R.S. § 13-1-124.

22.     This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Colorado and maintains its principal place of business at 700 Broadway, Denver, Colorado 80203, in the City and County of Denver.

23.     In the alternative, and independently, this Court has specific personal jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business in Colorado and the claims asserted herein arise out of or relate to Defendant's Colorado–based conduct, including the administration of health benefit plans,

6

claim handling, payment decisions, and/or the failure to remit payment amounts owed to Plaintiff.

24.    Venue is proper in this Court because Defendant maintains its headquarters and principal place of business at 700 Broadway, Denver, Colorado 80203, in the City and County of Denver, conducts substantial business in this county, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this county, including claim administration, payment decision-making, and the resulting injury.

25.    Venue is also proper because Defendant is subject to service of process in this State and maintains a registered agent for service of process in this State, and because Plaintiff seeks relief under the laws of the State of Colorado, including Colorado's prompt payment statute C.R.S. § 10-16-106.5, which governs Defendant's claim payment obligations and interest on overdue payments.

26.    Plaintiff reserves the right to amend these allegations as additional jurisdictional and venue facts are confirmed through investigation and discovery, including Defendant's corporate structure, claim administration locations, and the locations where payment decisions were made and implemented.

## FACTUAL BACKGROUND

### Claims Submission, Underpayment, and Nonpayment

27.    Plaintiff is a licensed healthcare provider that, in the ordinary course of its practice, renders medically necessary healthcare services to patients, including individuals enrolled in or covered by health benefit plans issued, administered, and/or managed by Defendant.

7

28.    At all relevant times, Defendant was responsible for administering benefits and processing and paying (or causing to be paid) claims for covered services provided to Defendant's members.

29.    Plaintiff rendered medically necessary services to Defendant's members, and Plaintiff timely submitted claims for reimbursement consistent with applicable plan requirements, Defendant's submission protocols, and applicable law.

30.    Plaintiff submitted clean claims where applicable – i.e., claims submitted with the information reasonably necessary for Defendant to adjudicate the claim and make payment – together with supporting documentation as required by Defendant and/or applicable standards.

31.    Defendant failed to pay certain claims, underpaid certain claims, and/or delayed payment without reasonable justification. In many instances, Defendant issued initial payment determinations that Plaintiff reasonably disputed due to substantial underpayments.

**Open Negotiation and IDR Determinations (Background Context Only)**

32.    For certain out-of-network items and services, the federal No Surprises Act ("NSA") establishes a process that may include an open negotiation period and, where applicable, Independent Dispute Resolution ("IDR").

33.    Consistent with that process, Plaintiff engaged in open negotiation with Defendant for applicable claims. When those efforts did not resolve the disputes, Plaintiff initiated IDR for applicable claims, consistent with the procedures established under the NSA and implementing regulations.

8

34.     Independent dispute resolution entities issued determinations in Plaintiff's favor on multiple occasions (the "IDR Determinations"), identifying reimbursement amounts owed by Defendant for specific claims and dates of service. The IDR Determinations and the amounts stated therein are attached as Exhibit A.

35.     Plaintiff alleges the NSA/IDR history solely as factual background and evidence of the amounts Defendant owes, and to show the unreasonableness of Defendant's continuing nonpayment and delay.

## Defendant's Continued Nonpayment After Determinations and Demand

36.     Following issuance of the IDR Determinations, Plaintiff provided notice to Defendant and demanded payment of the amounts owed, including by transmitting written demand letters and supporting documentation and by identifying the relevant claim identifiers and IDR determination information.

37.     Despite notice and demand, Defendant failed to remit payment for multiple IDR Determinations, failed to remit payment in full, and/or delayed payment for extended periods without reasonable justification.

38.     Defendant's nonpayment and delays are not isolated administrative errors. Plaintiff has experienced repeated instances of nonpayment and prolonged delay across multiple claims and multiple IDR Determinations, evidencing a pattern of retaining amounts owed while Plaintiff bears the financial burden of delivering care.

## State-Law Timeliness Obligations

9

39.    Separately and additionally, Defendant failed to timely pay certain clean claims and other amounts due within timeframes required by applicable state law, and is liable for statutory interest and other relief as permitted by that law.

### Harm to Plaintiff

40.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including, without limitation:

      a.  unpaid reimbursement amounts;

      b.  loss of the time value of money;

      c.  increased administrative and collection costs;

      d.  disruption to cash flow and operations; and

      e.  other consequential harms to be proven at trial.

41.    Defendant has been unjustly enriched by failing to pay Plaintiff for services rendered, thereby retaining the benefit of those services – including the discharge of Defendant's obligation to its members to provide or pay for covered healthcare – without providing the compensation due.

### Summary of Amounts Owed

42.    As of the filing of this Complaint, Defendant owes Plaintiff at least **$446,264.49** across **57** unpaid IDR Determinations and related claim balances, as reflected in Exhibit A.

### CAUSES OF ACTION

### COUNT I – UNJUST ENRICHMENT

10

43.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

44.    Unjust enrichment is an equitable doctrine that prevents a party from retaining a benefit conferred by another where retention without payment would be unjust. Plaintiff alleges (a) Defendant received a benefit from Plaintiff, and (b) Defendant's retention of that benefit without payment is inequitable.

45.    Plaintiff rendered medically necessary healthcare services to individuals covered by health benefit plans issued, administered, and/or managed by Defendant.

46.    In provider–insurer disputes, the relevant "benefit" is not merely the medical services in the abstract, but the discharge of Defendant's obligation to its insured/member to provide, arrange for, or pay for covered healthcare services. By furnishing covered services to Defendant's members, Plaintiff satisfied obligations that Defendant owed under its plans and/or applicable law, thereby conferring a cognizable benefit on Defendant.

47.    Defendant had reasonable notice that Plaintiff expected to be paid for the benefit conferred. Plaintiff submitted claims and/or invoices for the services rendered, and Defendant acknowledged the claims by issuing explanations of benefits ("EOBs") and/or other claim adjudication communications.

48.    Defendant failed to pay certain claims, underpaid certain claims, and/or unreasonably delayed payment, thereby retaining the benefit of Plaintiff's performance without commensurate compensation.

49.    For applicable claims, the parties' dispute over the appropriate amount owed was addressed through the NSA open negotiation and IDR processes. Certified IDR entities

11

issued determinations identifying additional amounts owed by Defendant for specific claims, as reflected in Exhibit A.

50.    Plaintiff pleads the IDR history as factual context and valuation evidence. The IDR determinations provide a concrete, non-speculative measure of the value of the benefit Defendant retained after Plaintiff discharged Defendant's obligations by providing covered care.

51.    Despite notice and demand, Defendant failed to remit payment and/or failed to remit payment in full for multiple claims, including claims for which IDR determinations confirmed additional amounts owed, resulting in a direct connection between Plaintiff's impoverishment and Defendant's enrichment.

52.    Defendant's retention of the benefit without payment is unjust and inequitable because Defendant accepted and retained the benefits of Plaintiff's services for Defendant's members while withholding monies that, in equity and good conscience, should be paid to Plaintiff.

53.    As a further result of Defendant's delayed and withheld payments, Defendant has obtained additional financial benefits from retaining funds owed to Plaintiff, including the time-value of money and, to the extent proven, interest, float, or investment-related benefits derived from the retention of amounts due.

54.    Plaintiff is therefore entitled to equitable relief, including restitution of the value of the benefit wrongfully retained, disgorgement of unjust benefits obtained through nonpayment and delay, and such other equitable relief as the Court deems just and proper, together with prejudgment and post-judgment interest as permitted by law.

12

## COUNT II – QUANTUM MERUIT

55.     Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

56.     Plaintiff provided medically necessary healthcare services to individuals covered by health benefit plans issued, administered, and/or managed by Defendant.

57.     Plaintiff rendered those services with a reasonable expectation of being paid for the services provided, including payment of the reasonable value of the services and/or amounts otherwise due and owing for the services at issue.

58.     Defendant accepted, utilized, and benefited from Plaintiff's services, including because Plaintiff's services discharged Defendant's obligations to its members to provide, arrange for, and/or pay for covered healthcare services.

59.     Defendant had notice that Plaintiff expected to be compensated for the services rendered, including because Plaintiff submitted claims and/or invoices for payment and Defendant issued explanations of benefits ("EOBs") and/or other claim adjudication communications reflecting Defendant's processing of the claims.

60.     Defendant has failed to pay, has underpaid, and/or has unreasonably delayed payment for the services at issue, including with respect to claims for which the amount owed was confirmed through applicable processes (including the NSA open negotiation and IDR processes).

61.     Under the circumstances, it would be unjust and inequitable for Defendant to retain the benefits of Plaintiff's services without paying Plaintiff the reasonable value of those services and/or amounts due.

13

62.    Plaintiff is entitled to recover, in quantum meruit, the reasonable value of the services rendered to Defendant's members, together with prejudgment and post-judgment interest, and such other relief as may be appropriate.

## COUNT III – VIOLATION OF COLORADO
## PROMPT PAY LAW AND REGULATIONS
### (C.R.S. § 10-16-106.5)

63.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

64.    Colorado's prompt payment requirements governing healthcare claims arise pursuant to C.R.S. § 10-16-106.5 and related rules and regulations promulgated by the Colorado Division of Insurance (the "Prompt Pay Framework").

65.    At all relevant times, Defendant was a "carrier" and/or acted through an administrator or other delegated claims-processing entity, as those terms are defined and used within the Prompt Pay Framework, and was therefore subject to Colorado's prompt payment requirements with respect to claims for covered healthcare services submitted by Plaintiff.

66.    Plaintiff submitted claims for covered services to Defendant, and those claims were submitted with the information reasonably necessary for Defendant to adjudicate the claims and make payment.

67.    Pursuant to C.R.S. § 10-16-106.5(4), Defendant was required to pay, deny, or settle clean claims within the timeframes required by Colorado law, including:

  a.    within thirty (30) calendar days after receipt by the carrier if the claim was submitted electronically; and

14

b.      within forty-five (45) calendar days after receipt by the carrier if the claim was submitted by any other means.

68.    Pursuant to C.R.S. § 10-16-106.5(4)(b), if Defendant contended that resolution of any claim required additional information, Defendant was required, within thirty (30) calendar days after receipt of the claim, to provide a full written explanation of what additional information was needed to resolve the claim.

69.    Absent fraud, claims requiring additional information must be paid, denied, or settled within ninety (90) calendar days after receipt by the carrier once the necessary information has been provided.

70.    Defendant failed to pay, deny, or settle claims submitted by Plaintiff within the timeframes required by C.R.S. § 10-16-106.5 and/or failed to timely remit payment of amounts that became due following adjudication and dispute-resolution processes, including amounts reflected in Exhibit A.

71.    Under C.R.S. § 10-16-106.5(5)(a), Defendant is liable for the covered benefit and must also pay interest at the rate of ten percent (10%) annually on the total amount ultimately allowed on the claim, accruing from the date payment was due.

72.    In addition, under C.R.S. § 10-16-106.5(5)(b), Defendant is liable for a statutory penalty equal to twenty percent (20%) of the total amount ultimately allowed on the claim where Defendant failed to pay, deny, or settle the claim within ninety (90) days after receipt.

73.    As a direct and proximate result of Defendant's failure to comply with the Prompt Pay Framework, Plaintiff has been damaged, including by being deprived of timely

15

reimbursement, losing the time value of money, and incurring additional administrative and collection costs.

74.    Plaintiff is entitled to recover all relief available under Colorado law, including the covered benefits due, statutory interest, statutory penalties, costs, and such other relief as the Court deems just and proper.

## COUNT IV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

75.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

76.    Plaintiff is entitled to enforce Defendant's payment obligations arising from the parties' payment relationship, including through valid assignments of benefits executed by Defendant's members and/or as an intended third-party beneficiary, as applicable to particular claims.

77.    The parties' contractual payment arrangements constitute contracts governed by Colorado law.

78.    Every contract governed by Colorado law contains an implied covenant of good faith and fair dealing, which requires that neither party act in a manner that destroys or injures the right of the other to receive the fruits of the contract.

79.    Defendant breached the implied covenant by exercising its claims-processing discretion arbitrarily, unreasonably, and in bad faith, including by:

   a.    Failing to timely and fairly adjudicate covered claims;

   b.    Issuing payment determinations without reasonable basis;

16

c.      Engaging in delay tactics designed to avoid or postpone payment;

d.      Failing to remit payment after amounts owed were determined through applicable processes; and

e.      Withholding payment despite notice, demand, and confirmation of amounts due.

80.     Defendant's conduct lacked a reasonable basis and was undertaken with knowledge or reckless disregard of Plaintiff's contractual rights, thereby depriving Plaintiff of the benefits reasonably expected under the parties' payment relationship.

81.     As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages including unpaid benefits, consequential losses, administrative costs, and loss of the time value of money.

### COUNT V – INSURANCE BAD FAITH FAILURE TO PAY

82.     Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

83.     Defendant owed a duty to act in good faith in the handling and payment of claims submitted for services rendered to its members.

84.     Defendant lacked a reasonable basis for failing to pay the amounts owed for covered services rendered to its insured members.

85.     Defendant knew, or recklessly disregarded that it lacked a reasonable basis for its failure to pay.

17

86. Defendant's conduct was intentional, malicious, or undertaken in reckless disregard of Plaintiff's rights, including by withholding payment after the amount owed was determined through binding dispute-resolution procedures.

87. As a result of Defendant's bad faith conduct, Plaintiff suffered damages including unpaid benefits, consequential losses, and additional financial harm.

88. Plaintiff should be awarded punitive damages as a result of Defendant's flagrant bad faith conduct.

## COUNT V – BREACH OF IMPLIED-IN-FACT CONTRACT

89. Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

90. At all relevant times, Defendant administered payment obligations for members who received medically necessary services from Plaintiff.

91. Through an established and ongoing course of dealing between Plaintiff and Defendant, an implied-in-fact contract arose based upon the parties' conduct and mutual assent, as demonstrated by:

    a. Plaintiff's provision of medically necessary services to Defendant's members with the reasonable expectation of payment;

    b. Plaintiff's submission of claims and required documentation in accordance with Defendant's claims-processing procedures;

    c. Defendant's acceptance, review, and adjudication of those claims;

18

    d.    Defendant's issuance of explanations of benefits ("EOBs") and payment determinations identifying allowed amounts and payment responsibility;

    e.    Defendant's partial payments on certain claims; and

    f.    Defendant's participation in open negotiation and dispute-resolution processes concerning payment amounts.

92.    The parties' conduct manifested mutual assent that Plaintiff would furnish services and Defendant would process and pay for those services in accordance with established payment practices and applicable law.

93.    The consideration for the implied-in-fact contract consisted of Plaintiff's provision of healthcare services that discharged Defendant's obligations to its members, in exchange for Defendant's agreement to process and remit payment for those services.

94.    Plaintiff fully performed its obligations under the implied-in-fact contract by rendering the services at issue and submitting claims and supporting documentation consistent with Defendant's requirements and industry standards.

95.    Defendant breached the implied-in-fact contract by failing to honor its payment obligations arising from the parties' course of dealing, including by:

    a.    Failing to remit payment, or remitting only partial payment, for services rendered;

    b.    Issuing payment determinations inconsistent with Defendant's established payment practices;

19

c.    Unreasonably delaying payment after receipt of clean claims and/or necessary documentation;

d.    Failing to remit payment of balances confirmed through dispute-resolution processes for applicable claims (including, where applicable, IDR determinations alleged solely as valuation evidence); and

e.    Retaining the benefit of Plaintiff's performance without payment as contemplated by the parties' established course of conduct.

96.    Defendant's breaches deprived Plaintiff of the benefit of the parties' implied agreement and caused Plaintiff to suffer damages including unpaid amounts, administrative costs, and loss of the time value of money.

97.    Plaintiff is entitled to recover compensatory damages in an amount to be proven at trial, together with prejudgment and post-judgment interest and such other relief as the Court deems just and proper.

## COUNT VI – DECLARATORY JUDGMENT
### (C.R.S. §§ 13-51-105, 13-51-106)

98.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

99.    An actual, justiciable controversy exists between Plaintiff and Defendant concerning Defendant's payment obligations for the claims at issue, including:

a.    whether Defendant is obligated to remit payment for amounts due on claims submitted by Plaintiff;

b.    whether Defendant is obligated to remit payment of unpaid balances reflected in the IDR Determinations; and

c.    whether Defendant is obligated to pay statutory interest and related relief under applicable Colorado's prompt payment law and regulations.

100.    Pursuant to C.R.S. § 13-51-106, any person whose rights, status, or other legal relations are affected by a statute, contract, or other written instrument may obtain a declaration of rights or legal relations thereunder. Plaintiff's rights and legal relations are directly affected by Defendant's obligations under applicable Colorado law and the health benefit plans at issue.

101.    Pursuant to C.R.S. § 13-51-105, this Court has the power to declare the rights, status, and other legal relations of the parties, and such declaration shall have the force and effect of a final judgment.

102.    Plaintiff seeks a declaration that Defendant is obligated to timely pay the amounts due for the services rendered and claims submitted by Plaintiff, including amounts identified as owed in Exhibit A, and that Defendant's continued nonpayment and delay are inconsistent with Defendant's obligations under applicable law.

103.    Plaintiff further seeks a declaration that, to the extent the claims at issue constitute "clean claims" and/or otherwise fall within Colorado's prompt payment requirements, Defendant is obligated to pay such claims within the timeframes required by Colorado law and regulations and to pay interest and other relief on overdue payments as permitted by law.

21

104.    A declaratory judgment will serve a useful purpose in clarifying and settling the parties' legal relations and will terminate, or afford relief from, the uncertainty, insecurity, and controversy giving rise to this proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, and award the following relief:

1. An award of damages and/or payment in an amount to be proven at trial, including payment of all amounts due and owing on the claims at issue, including unpaid balances reflected in Exhibit A;

2. Restitution and disgorgement of all benefits wrongfully retained by Defendant, including the value of the benefit conferred and retained without payment and, to the extent proven, benefits derived from delay (including float/time-value benefits);

3. Statutory interest and penalties available under Colorado prompt payment law, including but not limited to C.R.S. § 10-16-106.5, including interest at the statutory rate and the statutory twenty percent (20%) penalty for claims not timely paid, denied, or settled;

4. Declaratory relief pursuant to the Colorado Uniform Declaratory Judgments Act, C.R.S. §§ 13-51-105 and 13-51-106, declaring the rights and obligations of the parties, including Defendant's obligation to remit payment for the claims at issue and to comply with Colorado prompt payment requirements;

5. Prejudgment interest and post-judgment interest as permitted by law;

22

6. Costs of suit, and attorneys' fees to the extent recoverable by contract, statute, regulation, or other applicable law;

7. Punitive damages to reflect the intentional and flagrant disregard of state law, including violations of insurance bad faith laws; and

8. Such other and further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: April 3, 2026

CALLAGY LAW, PC
Attorney for Plaintiff

By: /s/Brian Williamson
Brian Williamson, Esq.

23

# EXHIBIT A-2

Delay Reduction Order

<table>
<tr><td>

DISTRICT COURT
CITY & COUNTY OF DENVER, COLORADO
1437 Bannock Street, Room 256, Denver, Colorado 80202

**Plaintiffs:  Boulder Valley Iom LLC**

**v.**

**Defendants:   Rcymt Hosp And Medical Serv Inc**

</td><td>

DATE FILED
April 8, 2026 11:14 AM
CASE NUMBER: 2026CV31209

**Court Use Only**

**Case Number:** 2026CV31230

**Courtroom: 275**

</td></tr>
</table>

## DELAY REDUCTION ORDER

All civil courtrooms are on a delay reduction docket.

IF AN ATTORNEY OR PRO SE PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE. THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(B)(2).

A. <u>All Civil Cases</u>:

1. **Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

2. **Default:** Application for entry of default under C.R.C.P. 55(a) must be filed within **21 days** after default has occurred.

   If all defendants are in default, a motion for entry of default judgment under C.R.C.P. 55(b) must be filed with the application for entry of default. Motions for entry of default judgment must comply with C.R.C.P. 121 § 1-14. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

3. **Trial Setting:** The Responsible Attorney as defined in C.R.C.P. 16(b)(2) must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **28 days** from the date the case is at issue. A case is "at issue" when: (a) all parties have been served and have filed all pleadings permitted by C.R.C.P. 7; or (b) defaults or dismissal have been entered against all non-appearing parties; or (c) at such other time as the Court directs.  This Court's setting dates are Tuesday, Wednesday or Thursday from 10 a.m. until noon and may be reached at 303-

606-2409.

4. **Service of this Order:** The Plaintiff or Responsible Attorney must send a copy of this order to all other parties who enter an appearance.

5. **Related Cases:** An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) form available in Room 256 of the City and County Building or at:
https://www.courts.state.co.us/userfiles/file/Information_Regarding_Related_Cases_Form(1).doc

6. **Interpreter Assistance.:** If any party or witness will require an interpreter, please notify the Courtroom Clerk as soon as possible and in no event later than 91 days before the trial date.

**B.** Cases under **C.R.C.P. 16**

1. **Case Management Conference:** The notice to set trial must also include a notice to set a Case Management Conference as required by C.R.C.P. 16(d)(1), to be held no later than **49 days** after the case is at issue.

2. **Proposed Case Management Order:** At least **7 days** before the Case Management Conference, the parties must file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

3. **Waiver of Case Management Conference:** A joint request to waive the case management conference may be included in the proposed Case Management Order, but unless such a request has been granted, counsel and any unrepresented parties should plan on appearing for the case management conference.

**C.** Cases under **C.R.C.P. 16.112/4/2025**

1. **Certificate of Compliance:** Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h). No Case Management Order or Case Management Conference is required.

Dated:  April 8, 2026                          BY THE COURT:

Kandace C. Gerdes
District Court Judge

2

# EXHIBIT A-3

Pre-Trial Order

| | |
|---|---|
| DISTRICT COURT<br> CITY & COUNTY OF DENVER, COLORADO<br> 1437 Bannock Street, Room 256, Denver, Colorado 80202 | |
| **Plaintiffs:  Boulder Valley Iom LLC**<br><br> v.<br><br>**Defendants:   Rcymt Hosp And Medical Serv Inc** | DATE FILED<br>April 8, 2026 11:15 AM<br>CASE NUMBER: 2026CV31209<br><br>**Court Use Only** |
| | **Case Number:** 2026CV31209<br><br>**Courtroom: 275** |
| **PRE-TRIAL ORDER** | |

## ALTERNATIVE DISPUTE RESOLUTION

**A.**

A separate ADR order will not be issued by the Court at this time, but parties may contact the Court Clerk, at any time, if they wish to have an ADR order entered.

**B.    DUTY TO CONFER**[1]

Colo. R. Civ. P. 121 § 1-15(8) states that "moving counsel and any self-represented party shall confer with opposing counsel and any self-represented parties before filing a motion." Rule 121 § 1-15(8) requires the parties to identify and attempt to resolve emerging issues before engaging in motions practice. The duty to confer requires counsel to confer in good faith either by telephone, in person, email, or in writing with any party who might potentially oppose the relief requested. A single unanswered email or phone call is insufficient to comply with the rule. The Court expects the parties to confer via live conversation and follow-up in their conferral. (E.g. Voicemail, e-mails and letters do not count as live conversation. Please give counsel adequate time to respond, and opposing counsel should be timely in responding).

The word "shall" in Rule 121 § 1-15(8) is a mandatory requirement. Before filing a motion, the moving party must confer with any potentially opposing party, as detailed above. "If no conference has occurred, the reason why, including all efforts to confer, shall be stated." The reason why no conference has occurred must be explained in substantive detail, and a lack of conferral with be excused only under unusual or extraordinary circumstances. On one end of the spectrum, it will not be acceptable for the moving party to make a single phone call, leave a voicemail requesting conferral, and submit a corresponding motion shortly thereafter without the required conferral. On the other hand, the Court will not allow a moving party to be hamstrung by an opposing party if the moving party has made numerous attempts to confer by leaving messages and there is no timely return communication. The Court will evaluate whether parties have satisfied the duty to confer on a case-by-case basis.

---

[1] The Court attributes the discussion to Colorado District Court Judges Gannett and Villasenor and US District Court Magistrate Judge Boland's interpretation of the conferral requirement.

The Court provides the following guidance as to "good faith conferral":

> To confer means "to hold a conference; compare views; consult together." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 278–79 (Ninth Printing 1971). The rule is not satisfied by one party sending a single e-mail to another party, and particularly not where, as here, the e-mail merely indicates an intention to file a motion to compel and does not suggest any negotiation or compromise. Nor, in my view, would a single letter or a single voice message satisfy the requirements … (internal citation omitted). Rather, to satisfy the requirements … the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate. *Hoelzel v. First Select Corp.,* 214 F.R.D. 634, 635-636 (D. Colo. 2003).

Further, "the quality of the contacts is far more important than the quantity … reasonable efforts to confer in good faith ... generally requires counsel to 'converse, confer, compare views, consult and deliberate.'" *Id.*

The Court also reads Rule 121 § 1-15(8) as applying to *pro se* parties in the same manner as it applies to any attorney entering an appearance before the Court.

## C.    <u>MOTIONS</u>

1.  <u>DO NOT, UNDER ANY CIRCUMSTANCES, COMBINE PLEADINGS (*i.e.*, Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment). IF YOU DO, YOUR PLEADING MAY BE STRICKEN *SUA SPONTE.*</u>

2.  Plan ahead as "forthwith" motions are discouraged.[2] Your emergency may not be considered the Court's emergency.

3.  The Court interprets C.R.C.P. 121, § 1-15 to require the moving party to give non-moving party(s) <u>at least two business days</u> to respond before the moving party files the motion.

4.  The parties shall comply with the formatting requirements of C.R.C.P. 10 for each and every motion.

5.  A motion will be followed by a response, and a reply, unless this Court has eliminated a reply or other pleading pursuant to C.R.C.P. 121. No other pleadings relating to a given motion will be accepted for filing unless permitted by court order.

6.  The requirements of C.R.C.P. 121 § 1-15 concerning the content of briefs will be strictly enforced. **Except as otherwise outlined in this order, all motions and briefs are limited to 10 pages in length.**  Should a party wish to exceed the Court's limit, the party shall seek court approval prior to filing the motion.

---

[2] If "forthwith" is used in the pleading, all parties shall be present to address the matter with the Court <u>in person</u> within 60 minutes of its acceptance of filing during normal business hours.

7. The requirements of C.R.C.P. 121 § 1-15 concerning the time for filing motions will be strictly enforced. Extensions of the deadlines are strongly discouraged because they make it unlikely that the motions will be ruled on in advance of trial. The Court may, if appropriate, expedite the briefing schedule.

8. It is the expectation that all motions, briefs, and other written submissions filed with the court are the original work of the attorney or attorneys who sign the pleading.  If Chat GPT or other AI is used to generate any written product filed with this court, a notice shall appear on the first page of the filing indicating that AI was used to generate all or part of the filing, as well as the specific portions of the filing (e.g., page number and paragraphs or lines) which contain the AI-generated content.

9. Once motions are at issue, they will be ruled upon as the Court's docket permits, usually without a hearing. Motions hearings will be set so as not to interfere with the conduct of other trials.

| **MOTIONS TO DISMISS (C.R.C.P. 12(b))** |
|---|

**10. Motions to Dismiss pursuant to C.R.C.P. 12(b):**

a.  If the motion to dismiss may be resolved by the filing of an amended pleading (e.g. a defect in the complaint can be cured by amending the complaint) the Court expects counsel to confer prior to filing such a motion to dismiss.  Should such a motion be filed after conferral, the moving party must include a statement describing the conferral regarding curing of defect(s) through amendment.

b.  If the motion is brought under C.R.C.P. 12(b)(1)-(4), it must identify:  (1) the grounds for dismissal; (2) which party has the burden of proof; (3) the material facts; and, (4) whether materials outside the pleadings should be considered.

| **MOTIONS PURSUANT TO C.R.C.P. 56** |
|---|

**11. Motions pursuant to C.R.C.P. 56 shall be filed at least <u>91 days</u> (13 weeks) before trial and there shall be no separate deadline for the filing of cross-motions as reflected in C.R.C.P. 56.** The Court will generally not grant extensions of time to file summary judgment motions as this will limit the Court's opportunity to review the matter and issue a ruling prior to trial. Failure to comply with the motions deadline set forth in this Order may result in a delayed ruling or no ruling from the Court prior to trial.

**Absent prior permission from the Court, the parties are limited to filing a single motion for summary judgment.**

**Absent prior permission from the Court, the parties are limited to filing a single motion for determinations of questions of law.**

a. Motion, Page Limits, and Exhibits

These procedures contemplate the filing of a single motion for summary judgment by a party. The sections of a motion/response/reply discussed below that address *facts* will not count toward the page limit outlined in C.R.C.P. 121 § 1-15(1)(a). Additionally, the case caption, signature block, certificate of service, and attachments will not count toward the page limit.

b. Exhibits

Exhibits attached to a motion for summary judgment, a response in opposition, or a reply must follow the following format. Defendant must label his/her/its exhibits by letters: A, B, C…Z, AA, BB, etc. Plaintiff must designate his/her/its exhibits by numbers: 1, 2, 3, 4, etc.

When filing any exhibits in support of, or opposition to, a motion, the party must label the exhibit and include its title so that the description appears in the register of actions. For example: "Ex. A, John Smith Decl." "Ex. 3, Sales Contract." "Ex. F, Plaintiff Depo."

**The parties are hereby ordered to deliver to the courtroom a courtesy copy of all exhibits in a 3-ring binder(s) with labels, tabs and indexed, within 3 business days of a submission relative to the dispositive motion(s), response and/or reply.   The parties are independently required to upload all exhibits in ICCES.**

c. Motion Format

*Facts Section.* The moving party must use the following format:  the movant must create a section of the motion titled "Statement of Undisputed Material Facts" and must set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law. The movant must avoid adding unnecessary adjectives or adverbs to his or her material facts. In general, the Court finds such descriptors vague and unhelpful to adjudicate summary judgment motions.

Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes that fact. General references to pleadings, depositions, or documents are insufficient if the document is over one page in length. A "specific reference" means the title of the document (e.g., "Exhibit A, Pl. Depo.") and a specific paragraph or page and line number; or, if the document is attached to the motion, the paragraph or page and line number.

*Legal Argument Section.*  For each claim for relief or defense as to which judgment is requested, the motion must: (a) identify which party has the burden of proof; (b) identify each element that must be proved; (c) for each identified element, identify the material undisputed facts that prove that element and the pinpoint location in the filed record; or (d) if the respondent has the burden of proof, identify the elements which the movant contends the respondent cannot prove (with reference to the record).

d. Response Format

*Facts Section.* Any party opposing the motion for summary judgment must create a section of the response titled "Response to Statement of Undisputed Material Facts," and must

respond by deeming the facts "undisputed," "disputed," or "undisputed for purposes of summary judgment." Each response must be made in separate paragraphs numbered to correspond to movant's paragraph numbering. A "disputed" response must address the fact as tendered by the movant, not a fact that the non-movant wishes had been tendered. Proper responses to a "disputed" fact should be limited to an argument that (1) the particular parts of materials in the record don't establish the absence or presence of a genuine dispute; or (2) the movant cannot produce admissible evidence to support the fact. The response must be accompanied by a brief factual explanation to support the dispute.

**If the non-movant fails to properly address the other party's assertion of fact as required here, the Court generally will consider the fact undisputed for purposes of the motion.**

If the party opposing the motion believes that there are additional disputed (or undisputed) facts which it has not adequately addressed in the submissions made in the facts section, the party must create a separate section of the response titled "Statement of Additional Disputed (or Undisputed) Facts," and must set forth in simple, declarative sentences, separately numbered and paragraphed, each additional material undisputed/disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed/undisputed.

***Legal Argument Section.*** The response must utilize the same format for each claim/defense as set forth above: (a) if the respondent disputes the statement of the burden of proof on necessary elements, it must identify such as disputed and must provide supporting legal authority. (b) If the movant has the burden of proof, the respondent must identify all elements for which there are disputed material facts, as well as provide a brief explanation of the reason(s) for the dispute and specific references to supportive evidence in the record appendix. Stipulation to facts not reasonably in dispute is highly encouraged. (c) If the respondent has the burden of proof, for each element identified by the movant as lacking proof, the respondent should identify the facts and their location in the record that establish that element.

e. <u>Reply Format</u>
***Facts Section.*** At the beginning of the reply, the movant must list the facts that are undisputed and disputed by their respective paragraph number.

The movant must create a section titled "Reply Concerning Undisputed Facts" and must include any **factual** reply regarding the facts asserted in its motion to be undisputed, supported by specific references to material in the record. The reply will be made in separate paragraphs numbered according to the motion and the opposing party's response.

The movant must create a section titled "Response Concerning Disputed Facts" to respond to those facts claimed to be in dispute, and either admit that the fact is disputed or supply a brief factual explanation for its position that the fact is undisputed, accompanied by a specific reference to material in the record which establishes that the fact is undisputed.

The movant's response to undisputed fact must be done in paragraphs numbered to correspond with the opposing party's paragraph numbering.

***Legal Argument Section.***  The movant must respond to the legal arguments made by the respondent and must not raise new issues.

Finally, legal argument is not permitted in the factual sections of the motion/response/reply and should be reserved for the legal argument section(s) of the documents. If, for example, a party believes that an established fact is immaterial, that argument must go in the legal argument section, and the fact should be admitted. If, on the other hand, a party believes that the reference to material in the record does not support the claimed fact, that fact may be disputed accompanied by a brief *factual* argument made under these procedures.

<div align="center">

**MOTIONS – EXPERT TESTIMONY**

</div>

12. **Motions challenging expert testimony pursuant to C.R.E. 702 must be filed at least <u>70 days</u> (10 weeks) before trial unless a different time is permitted by court order.**  C.R.C.P. 16(c).  Motions shall include the following: (1) identification of the expert witness and separately state each opinion/testimony the moving party seeks to exclude; (2) a response for each opinion/testimony with the specific foundational challenge made to the opinion/testimony, e.g., relevancy, sufficiency of facts and data, methodology. C.R.E. 702 and 703; and, (3) indication of whether an evidentiary hearing is requested, explain why such a hearing is necessary, and specify the time needed for the evidentiary hearing (assuming time is divided equally between the parties).

    If an expedited ruling is desired, the moving party must specifically request an expedited schedule in the original motion and the moving party must contact the Clerk of Courtroom 275 to advise of this request.  The Court may *sua sponte* expedite the briefing schedule pursuant to C.R.C.P. 121 §1-15.

    The Court in its discretion may set a hearing to determine the admissibility of the challenged opinions under the Colorado Rules of Evidence.

<div align="center">

**MOTIONS IN LIMINE**

</div>

13. **Motions *in limine* shall not exceed 5 pages and must be filed at least <u>35 days</u> prior to trial unless a different time is permitted by court order.** C.R.C.P. 16(c).  Responses shall be filed no more than **<u>7 days</u>** after the motion is filed, unless a different time is permitted by court order. **<u>No replies shall be allowed.</u>**

<div align="center">

**OTHER PRETRIAL MOTIONS**

</div>

14. **Other pretrial motions must be filed at least <u>42 days</u> before trial unless a different time is permitted by court order.** Responses shall be filed **14 days** after the filing of the motion unless a different time is permitted by court order. <u>No replies shall be allowed.</u>

**D.    DISCOVERY**

1.  Failure to disclose or insufficient/untimely disclosure of any document, exhibit or opinion is undertaken <u>at your own risk</u>. Similarly, delaying discovery until the eve of deadlines and/or trial is undertaken <u>at your own risk</u>. Do not procrastinate in the preparation of your case.

2.  **<u>NO WRITTEN DISCOVERY MOTIONS WILL BE ACCEPTED.</u>**  The Court will address *ALL* discovery disputes with a discovery hearing (in-person) instead of by formal written motions.  A "discovery dispute" means a disagreement involving issues arising under C.R.C.P. 16, 16.1, 26, 30, 31, 33, 34, 35, 36, 37, and 45. The purpose of this procedure is to ensure an expedited and inexpensive resolution of discovery disputes.  The following procedures will be in effect in this case:

    a.  If there is a discovery dispute, counsel are expected to confer in a meaningful way as set forth above, to try to resolve it.   This means in writing, by telephone, or in person.  An exchange of emails is not sufficient.

    b.  If counsel cannot resolve the dispute, they shall contact the Clerk for this court during setting times (Tuesday, Wednesday & Thursday from 10 am – 12 noon) at 303-606-2409. If counsel cannot agree on a date the Court will set the hearing date.

    c.  The dispute will be argued and resolved at the hearing, or taken under advisement with a prompt ruling by the Court.  The parties shall file a one page, concise identification of the discovery issues in dispute (with citations) and provide a copy of any legal authority that might be helpful to the Court, at least 2 business days before the hearing. The discovery issues shall be laid out clearly and explain the legal and factual justifications for an objection.  **This shall be done in lieu of filing a written motion and response. <u>DO NOT</u> file any written motion, attachments, etc. unless the Court requests it.**

    d.   If a dispute occurs during a deposition, please call the clerk of this courtroom at the above number and advise them about the nature of the dispute.  The Court will address the dispute as quickly as possible, based upon the Court's availability.

    e.  If the parties need immediate resolution of a discovery issue, and if the issue is relatively discrete, they are encouraged to call the Clerk of Courtroom 275 (303) 606-2409, and every effort will be made to hear the matter orally and immediately *via* a telephone status conference, or on an expedited basis as possible.

3.  The Court will assess the motion and will either rule on the motion or notify the parties that a hearing (telephonic or in person) is required.  The Court will set any required herein as quickly as possible. If counsel cannot agree on a date for hearing, the Court will set the date.

4. For additional detail and clarification, please see the last pages of this order following the signature page.

## E.    EXPERTS

1.  Disclosure of expert opinions must comply with C.R.C.P. 26(a)(2).

2.  Experts shall be limited to testifying on direct examination about matters disclosed in reasonable detail in the written expert disclosures.

3.  If a party intends on using a treating expert's opinion(s) that go beyond the four corners of his/her/their records or reasonable inferences therefrom, the opinion(s) must be fully and fairly disclosed.

## F.    CASE MANAGEMENT ORDER

1.  The provisions of C.R.C.P. 16 and 16.1 concerning presumptive and modified case management orders will apply.

2.  At the same time as the Notice to Set Trial is filed, the Responsible Attorney shall file a notice to set a Case Management Conference as required in C.R.C.P. 16(d)(1), to be held no later than 49 days after the case is at issue, and shall provide notice of the conference to all parties.

3.  Not later than 42 days after the case is at issue and at least 7 days before the Case Management Conference, the parties shall file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

4.  If all parties are represented by counsel, no later than 35 days after the case is at issue, counsel may file a proposed Case Management Order in compliance with C.R.C.P. 16(b) and may jointly request the Court to dispense with a Case Management Conference.

5.  If the parties cannot agree on a modified case management order, they shall submit a draft order identifying the areas of disagreement.  The Court will decide the disputed matters and will issue a Case Management Order promptly.

6.  The parties shall contact the Clerk of Courtroom 275 at (303) 606-2409 during setting times (Tuesday, Wednesday & Thursday from 10 am – 12 noon) to schedule a case management conference if they think one will be helpful.

7. Cases Filed Under C.R.C.P. 16.1:  Not later than 49 days after the case is at issue, the Plaintiff (or Responsible Attorney) shall file a Certificate of Compliance as required under C.R.C.P. 16.1(h).  No Case Management Order or Case Management Conference is required.

## G.    TRIAL SETTING

All cases **shall be set for trial not later than 28 days** from the date the case is at issue.  If a case is not set for trial within this deadline, the Court will issue an order to show cause as to why the case should not be dismissed.

No case will be set for trial **more than 360 days from the filing of a complaint or initial pleading or for a length of more than 5 days without the Court's permission**.  CJD 08-05 Before permission is granted, the Court may set a conference between counsel and the Court as to why a longer setting or length if trial is needed.

In the caption of the Notice to Set Trial, the parties shall indicate if it is a jury or court trial and the number of days requested.

Continuances will NOT be granted as a matter of course, even if stipulated. Continuances will be granted only for good cause shown. Contested motions for continuance will likely be decided on the first day of trial unless ripe at least **7 days** before trial.

## H.    TRIAL MANAGEMENT ORDER

1. Plaintiff's counsel shall prepare and submit a Trial Management Order ("TMO") no later than **28 days** before the date of trial.  **ALL parties must participate in the preparation of the TMO.**

2. In the event that a Pre-trial Conference is scheduled, the TMO must be filed no later than the Pre-trial Conference.

3. The TMO must comply strictly with the requirements of C.R.C.P. 16, as amended. The Court requires a TMO for ALL cases.

## I.    TRIAL PREPARATION

1. A Pre-trial Conference is not scheduled by the Court automatically.  The parties may contact the clerk of this Court at any time, if they wish to schedule a Pre-trial Conference in this matter. Unless good cause is shown to hold the conference closer to trial, the Pre-trial Conference shall be held no later than **7 days** before trial.

2. The FTR shall be the official record in this case, absent an agreement to use a freelance court reporter.  Counsel and any party appearing *pro se* shall decide if a retained court reporter will be used.  Review and comply with the 2nd Judicial District Chief Judge Directive 2011-1 and attached policy regarding Court Reporters.

3.  Any Trial Briefs must be filed no later than **7 days** before trial and shall not exceed 5 pages. In lieu of a trial brief, a party may file a list of case and statutory authority upon which the party intends to rely.

4.  **Witness Lists**. A correctly spelled list of the probable witnesses who may be called. In addition to listing the names of the witnesses, the list shall also specify the witnesses' titles or degrees and employment (e.g., Dr. John Smith, M.D., Children's Hospital) if applicable.

5.  **Joint Order of Proof**. Counsel **shall confer** and prepare a joint order of proof which identifies each counsel's good-faith estimate of the order in which witnesses will be presented and the time required for direct and cross-examination of each witness.

6.  **The witness lists and order of proof shall be filed no later than 7 days before the commencement of trial. PLEASE SEE THE ATTACHED TEMPLATE WHICH, UPON REQUEST, CAN BE TRANSMITTED TO THE PARTY(S) IN EDITABLE FORMAT.**

7.  **Exhibits.**
    a.  The parties shall exchange copies of their pre-marked exhibits **no later than 21 days** before trial.

    b.  The parties must prepare a comprehensive Index of Exhibits and note those exhibits which are stipulated.  Authenticity of all identified and exchanged exhibits shall be deemed admitted unless an objection, in writing, is filed **14 days** before trial or after receipt of the exhibits, whichever is sooner.

    c.  Counsel shall stipulate to admissibility of exhibits where appropriate to reduce use of Court and, if applicable, jury time. Each exhibit in the index should be accompanied by a number, Plaintiffs shall use numbers 1-999 and Defendants shall use numbers 1,000- 1,999. If there are multiple Plaintiffs or multiple Defendants the parties shall designate the exhibit number range each party will use.  Only where counsel has not had a reasonable opportunity to view and exhibit in advance will trial be interrupted for such a review.

    d.  All exhibits must be pre-marked with the number or letter identification, along with the case number.  On the day of trial, counsel shall have in their possession **three complete sets of all exhibits** (either paper or electronic): one copy for the judge, one copy for witness stand, and one copy for opposing counsel.

    e.  The parties shall exchange a photograph of any demonstrative exhibits **14 days** before the first day of trial.  Photographs shall be no larger than 8.5"x11" and counsel should agree that the items are accurately represented.

    f.  Unless the Court orders otherwise, <u>on or before the trial date</u>, the parties must submit <u>ALL</u> of their exhibits, and/or images of large or demonstrative exhibits, through the E-Filing system. Parties should anticipate that there are exhibits such as negotiable instruments where the original paper document may need to be tendered to the Court. Images of these exhibits shall also be filed through the E-Filing system. *See* CJD 11-01 ¶ VI. Submission of exhibits shall be in substantial compliance with Paragraph V, of Chief Justice Directive

11-01. *See id.* ¶ V. <u>Any violation of this Order regarding the submission of exhibits will be subject to sanctions including contempt of Court under C.R.C.P. 107.</u>

    g.  Copies of a draft of lists of exhibits and witnesses must be exchanged at least **42 days** before trial, as required by C.R.C.P. 16. Other orders concerning exhibits may be entered as necessary.

**8. Depositions**

    a.  If any party wishes to use depositions in place of live testimony, C.R.C.P. 16(f)(3)(VI)(D) shall be complied with.  The reading of depositions in lieu of live testimony is strongly discouraged.  However, if a deposition will be used, opposing counsel must be notified by proper identification of designated portions **no later than 28 days prior to trial.**  Any other party may then provide the parties with their designation **no later than 14 days before the trial date,** with all reply designations by the proponent then made **no later than 7 days before the trial date.**

    b.  Objections to all or part of the deposition testimony just be made not later than **3 business days prior to trial.**  All objections shall be filed with the designations and shall include a specific Rule of Evidence supporting the objection.

    c.  When applicable, offering counsel is required to provide someone to read testimony.

    d.  The parties must provide the Court with a single copy of the deposition transcript with the designations and cross designations indicated, **3 business days** before trial.

    e.  Original depositions will remain sealed until counsel requests at trial that the deposition be unsealed.  Before trial commences, the Court must receive copies of all depositions likely to be used at trial, as either direct evidence or as impeachment.

    f.  The same rules apply to transcribed, videotape, and DVD depositions alike.

9.  If a party needs **any form** of audio/visual equipment, the party(s) is responsible for providing it.  This includes extension cords and power surge strips.

## J.    <u>JURY INSTRUCTIONS</u>

1.  Attorneys are required to meet and confer in good faith, preferably in person, regarding jury instructions.  The Court has already prepared the following instructions: 3:1, 3:4, 3:8, 3:9, 3:12, 3:14, 3:15, 3:16, 4:1, 4:2, 4:2A, 5:1 and 5:6.  Counsel for the plaintiff is required to submit a <u>joint proposed initial draft</u> of the final jury instructions directly to the court **via e-mail** to the Court's law clerk (02courtroom275@judicial.state.co.us) no later than **7 days prior to the scheduled trial**.  By initial draft, the Court means a single document that includes the instructions the Court has already prepared, the instructions to which all parties have stipulated, and any additional or disputed instructions of any party, as discussed below.

    **<u>Please note: the Court does not need, nor will it accept, basic introductory or closing instructions, oaths, admonitions, lengthy annotations, or similar instructions.</u>**

2.  Counsel shall submit instructions using the following order: opening instructions; 2:1 claims and defenses; basic evidentiary instructions; instructions relating to the plaintiff's claims; instructions relating to defenses; damages; definitions; closing instructions.  The Court has prepared an example of the instructions to be used, in editable Word format, on the Colorado Judicial Branch website under the following link https://www.coloradojudicial.gov/contact/kandace-c-gerdes. **COUNSEL ARE STRONGLY ENCOURAGED TO USE THE INSTRUCTIONS ON THE WEBSITE AS A TEMPLATE WHEN PREPARING THE INITIAL DRAFT**; the initial draft submitted pursuant to this order shall be in substantial compliance with that format.

3. Unless a stipulation can be reached, counsel for both parties shall be responsible for submitting their own version of a proposed 2:1 instruction under the "Claims of the Parties" instruction. The Court will either choose between those submitted instructions or prepare its own.

4.  If counsel cannot agree on the wording of other instructions then both counsel shall submit instructions defining applicable stipulations, claims, standards of proof, affirmative defenses, damages, and special definitions under the appropriate sections.

5.  Additional instructions may be submitted.  However, the Court **does not** favor, and rarely gives, special instructions patterned after caselaw; any such instructions shall be submitted separately **via e-mail**, accompanied by a *brief* statement of authority, in compliance with the requirements for the initial draft.  All proposed instructions must be organized in substantial compliance with the format utilized by the Court.  If either counsel has an objection to a submitted instruction, the nature of the objection shall be *briefly* stated on the initial draft submitted to the Court, along with a *brief* statement of authority.

6.  The Court shall prepare proposed verdict forms that conform to the proposed instructions.

7.  All instructions must be submitted through the E-Filing system in editable format. *See* CJD 11-01 ¶ VII. Accordingly, two editable documents comprising the proposed jury instructions must be E-Filed **7 days** before trial: (1) one document of stipulated instructions (without CJI and/or case citations), and (2) one document of disputed instructions (with CJI and/or case citations). The set of instructions provided to the jury as well as a party's tendered instructions that have been rejected by the Court shall be uploaded in the E-Filing system.

8.  The Court will conduct a conference on the instructions during breaks, over the lunch hour, or at the end of the day.  Counsel and/or parties shall be prepared, with case citations, to discuss the disputed instructions at the time of the conference.  The goal is to have a completed set of instructions ready for the jury as soon as the presentation of evidence is concluded.

**K.    JUROR NOTEBOOKS (If Applicable)**

Each trial juror will be provided with a juror notebook. We will provide the notebooks, unless an oversize notebook is needed, in which case the parties must provide them. We will prepare general information and juror question forms, but the parties must prepare the remainder of the contents. Each page must be three-hole punched in advance so it can be placed in a notebook. Each party must file its materials with courtroom staff *in person* no later than 3:00 p.m. on the Thursday before

the first day of trial. The person bringing the materials to court must be prepared to place the material into the notebooks. Each party must supply an original and eight copies of the following:

1.  **Exhibit Lists**. A list of exhibits whose admissibility is stipulated or not subject to reasonable dispute.

2.  **Exhibits or Excerpts of Exhibits**. Copies of stipulated exhibits may be put in the juror notebooks. If exhibits are lengthy, stipulated excerpts may be used with my permission. The parties should bring to trial eight (three hole-punched) copies of any exhibit not stipulated to; copies will be placed in the notebook if and when the exhibit is admitted.

3.  **Glossary of Terms**. If there are any scientific or other specialized terms which will be used repeatedly, those should be set forth, with an agreed-upon definition. If the parties have a legitimate dispute about the definition of any term, just the term should be listed.

4.  **Timeline of Events**:  If a timeline of events would be of assistance to the jury, a stipulated timeline may be included in the juror notebooks.

## L.    JURY SELECTION (If Applicable)

1.  Each side will have a maximum of 20 minutes for *voir dire*, unless additional time is requested and permitted in advance of the first day of trial. In multi-party cases, time must be divided between all parties on the side(s) of the case.

2.  The Court will ask some basic questions before counsels' *voir dire*. If there are questions all parties believe the Court should ask during its *voir dire*, such questions should be submitted to the Court at least **7 days** before trial.  (This might involve a sensitive issue that would be easier for the Court to ask.)

3.  *Voir dire* will be conducted from the podium.   Argumentative questions during *voir dire* are not allowed.

4.  Typically, an alternate juror is selected. The Court will advise counsel on the first day of trial how the alternate will be designated. The Court prefers that the alternate be allowed to deliberate, but a final decision will be made before the venire arrives for trial.  In some cases, two alternate jurors will be seated.

5.  Peremptory challenges are to be made against the presumptive panel.

6.  Typically, challenges for cause will be exercised at the bench upon the conclusion of all parties' *voir dire*.

7.  **Peremptory challenges will be announced orally in open Court *by counsel*.**

## M.    CONDUCT OF TRIAL

**1.  Scheduling/Use of Time**
   a.  The trial day will start at 8:30 a.m. and end at 5:00 p.m. We will take a morning and an afternoon break of 15 to 20 minutes each. **Lunch will be approximately 1 hour within**

**the timeframe of noon to 1:30 p.m.** Adjustments to this schedule may be made for good cause shown or upon order of the Court.

b. Counsel and parties will be in court by 8:00 a.m. on each day of trial. This allows time for setup and preparation before beginning each trial day. It also provides an opportunity for counsel to discuss anything outside the presence of the jury before the trial day begins.

c. Jurors (if applicable) are the most important people in the decision-making process; their time is more valuable than ours. Witnesses must be scheduled so that no lengthy gaps occur in testimony. If there is a lengthy delay in one side's presentation of evidence, the Court will likely exercise its discretion and require the other side to begin the presentation of evidence. Proper concern for the jury's time is generally more important than the order in which evidence is presented.

d. Counsel and the Court will spend a few minutes at the end of each trial day (after the jury has been excused) discussing what will occur the next day, including what witnesses are scheduled and how much time each witness is expected to take.

2. **Opening Statements**. Each side will have a maximum of 20 minutes for its opening statement. In multiple-party cases, this time must be divided between the parties. Additional time may be permitted for good cause shown.

3. **Questioning of Witnesses**.
   a. Generally, questioning will be done from the podium unless permission is granted to approach the witness or the bench.

   b. Redirect may be limited or disallowed. The Court generally does not allow re-cross. Prior to questioning, counsel should ask to approach for a bench conference should a re-cross be sought.

   c. Juror questions will be permitted when all other questions have been asked. Jurors will submit written questions on forms which the Court will place in the juror notebooks. As required, the Court will decide on whether the question will be asked after a bench conference as to any question(s). Counsel may ask *brief* follow-up questions after juror questions have been asked, but only as to issues raised by the jurors' questions.

4. **Objections**.
   a. Make objections professionally: be brief, concise and specific.

   b. **Speaking objections are not permitted**.

   c. Do not automatically respond to an objection; if a response to an objection is needed the Court will  ask.

5. **Closing Arguments**. Each side will have 20 minutes for closing argument. In multiple-party cases, this time must be divided between the parties. Additional time may be permitted for good cause shown.

6. **Miscellaneous**. **In Court Ground Rules**
   a. Parties must remain at counsel table while court is in session.
   b. Counsel must use surnames.
   c. Counsel must stay at podium, must request to leave to approach.
   d. Parties must remain at counsel table at all times when trial is in session.
   e. Counsel and their clients are welcome to drink coffee or tea at counsel's table, but not out of a can or bottle. Water is provided.
   f. Chewing gum is not permitted in the courtroom.
   g. No food of any kind is permitted in the courtroom.
   h. No speaking objections in front of jury.
   i. Please turn off (or silence) all electronic devices before entering the courtroom.

**N.     GENERAL RULES**

1. If this Order conflicts with any Pre-Trial Order that was issued previously **THIS ORDER** will supersede.

2. Any reference in this Order to "counsel" includes *pro se* parties.

3. The parties are to **notify the Court within 24 hours of settlement or resolution of the case.   This should be accomplished by both calling the Courtroom at its main number of 303-606-2409 AND e-filing a notice of settlement. All documents confirming settlement shall be filed not later than 14 days from the date of settlement,** unless otherwise ordered by the Court.

4. Unless all parties agree on the record that exhibits need not be maintained, the following procedure will be followed:

   a. When the trial or hearing is concluded, each party will withdraw any exhibits or depositions which that party marked or admitted.

   b. Each party will maintain in its custody the withdrawn exhibits and depositions without modification of any kind until 63 days after the time for the need of such exhibits for appellate or other review purposes has expired, unless all parties stipulate otherwise on the record or in writing. It will be the responsibility of the withdrawing parties to determine when the appropriate time period has expired.

5. This is a *CIVIL* division. Counsel will treat jurors, parties, witnesses, me, my staff, and each other with professionalism, courtesy and respect at all times. This applies not only to the actual trial, but to all aspects of the case, including discovery and motions practice, and includes what is written as well as what is said.

   DATED: April 8, 2026

                                        BY THE COURT:

                                        _____
                                        Kandace C. Gerdes
                                        District Court Judge

## DISCOVERY PROTOCOL

Counsel are reminded that all discovery responses shall be made in the spirit and with the understanding that the purpose of discovery is to elicit facts and to get to the truth. The Rules of Civil Procedure are directed toward securing a just, speedy and inexpensive determination of every action. The discovery process shall not be employed to hinder or obstruct these goals, nor to harass, unduly delay or needlessly increase the cost of litigation.

## WRITTEN DISCOVERY

These discovery protocols shall be considered as part of the responsibility of parties and counsel to comply with the Rules of Civil Procedure relating to discovery.

1.  The parties should refrain from interposing repeated boilerplate type objections such as "overbroad, unduly burdensome, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence" and other similar objections. In the event any such objections are made; they shall be followed by a clear and precise explanation of the legal and factual justification for raising such an objection. Additionally, if the objecting party otherwise responds to the discovery request but does so subject to or without waiving such an objection, that party shall describe with reasonable specificity the information which may be available, but which is not being provided as a result of the objection raised.

2.  When a responding party claims not to understand either a discovery request or the meaning of any words or terms used in a discovery request, that party shall, within fourteen (14) days of receiving the discovery request, seek clarification of the meaning from counsel who served the discovery. A failure to seek such clarification shall be considered a violation of this Order for Discovery Protocol.

3.  A discovery response which does not provide the information or material requested but promises to do so at some point in the future will be treated as the equivalent of no response unless the party so responding provides a specific reason for the information not being produced as required by the Rules of Civil Procedure, and also provides a specific date by which such information will be produced.

4.  A response to a discovery request that does not provide the information or material requested but rather states that the party is continuing to look for or search for such information or material will be treated as the same as no response, unless that party provides a clear description of where such information or material is normally located, who is normally in custody of such information or material, where the party has searched, the results of the search, as well as the identity of all persons who have engaged in such a search. The responding party shall also provide a clear explanation of the ongoing search and a specific date by which the search will be complete.

5.  Whenever a party objects to discovery based upon a claim of attorney/client privilege, work product protection, or any other privilege or protection, that party shall produce a detailed privilege/protection log that includes at least the following for each such item for which privilege is claimed:

    a.   The information required by C.R.C.P. 26(b)(5);

    b.   The date of the information or material;

    c.   All authors and recipients; and

    d.   The specific privilege or protection which is claimed.

The proponent of the privilege has the burden of establishing that privilege. Failure to comply with this paragraph 5 and Order for Discovery Protocol will constitute a waiver of the claimed privilege.

## **DEPOSITIONS**

1. Depositions shall be conducted in compliance with the Colorado Rules of Civil Procedure.

2. During all depositions, counsel shall adhere strictly to C.R.C.P. 30(d) (1) and (3). No objections may be made, except those which would be waived if not made under C.R.C.P. 32(d)(3)(B) (errors, irregularities), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a C.R.C.P. 30(d)(3) motion (to terminate a bad faith deposition). Objections to form shall be stated: "Objection as to form." Any further explanation is inappropriate and prohibited unless specifically requested by the attorney asking the question.

3. There shall be no speaking objections. It is inappropriate and prohibited for an attorney, during the course of questioning, to advise a witness to answer, "if you know," or "if you remember." It is similarly prohibited for an attorney during questioning to advise a witness not to speculate. All such questions shall be considered speaking objections. All deponent preparation shall be conducted prior to the commencement of the deposition and shall not take place during the course of the deposition.

4. It is appropriate for the deponent to request clarification of a question. However, it is not appropriate for counsel to do so.

5. A deponent and an attorney may not confer during the deposition while questions are pending. Similarly, neither a deponent nor counsel for a deponent may interrupt a deposition when a question is pending or a document is being reviewed, except as permitted by C.R.C.P. 30(d) (1).

6. Counsel shall refrain from excessive objections that have the purpose or effect of disrupting the flow of questioning or the elicitation of testimony.

7. Counsel may instruct the deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under paragraph 3 of C.R.C.P. 30(d). Whenever counsel instructs a witness not to answer a question, counsel shall state on the record the specific reason for such an instruction, the specific question, part of a question or manner of asking the question upon which counsel is basing the instruction not to answer the question.

8. Violations of these Discovery Protocols will result in the Court limiting or prohibiting additional discovery in the case.

# WITNESS ORDER OF PROOF AND
# GOOD FAITH ESTIMATE OF TIME

**PARTIES:** _____          Case No. _____

| Party calling witness | WITNESS NAME | Proposed DIRECT | Proposed CROSS | Proposed REDIRECT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Page **19** of **19**

# EXHIBIT A-4

Civil Case Cover Sheet

☐**FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED
April 14, 2026 7:37 AM

FILING ID: 5F9CDC08F5E78
CASE NUMBER: 2026CV31209

| | |
|---|---|
| District Court _Denver_____ County, Colorado<br>Court Address: 1437 Bannock Street, Denver, CO 80202<br><br>_____<br><br>Plaintiff(s): Boulder Valley IOM LLC<br>v.<br>Defendant(s): Rocky Mountain Hospital and Medical Service, Inc. | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br> Brian A. Williamson, Esq.<br> 2550 W. Union Hills Ave, Suite 350-341, Phoenix, AZ 85027<br>Phone Number: (201) 261-1700    E-mail: bwilliamson@callagylaw.com<br>FAX Number: (201) 549-8408    Atty. Reg. #: 336547 | Case Number:<br>2026CV31209 |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,
COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT
AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR),, Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒ This party is seeking a monetary judgment against another party of more than $100,000.00, exclusive of interest and costs, as supported by the following certification:

   By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

   **Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)

**Date:** _____

_____
  **Signature of Party**

**Date:** ____04/13/2026____

*Brian Williamson, Esq.*
  **Signature of Attorney for Party (if any)_____**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

# EXHIBIT A-5

Summons

<table>
<tr><td>

District Court, __Denver_____County, Colorado
Court Address:
 1437 Bannock Street
 Denver, CO 80202

Plaintiff  BOULDER VALLEY IOM LLC

v.


Defendant  ROCKY MOUNT AIN HOSPITAL AND MEDICAL
          SERVICES, INC. D/B/A ANTHEM BLUE CROSS AND BLUE
          SHIELD
</td><td>

DATE FILED
April 14, 2026 7:37 AM
FILING ID: 5F9CDC08F5E78
CASE NUMBER: 2026CV31209

▲   **COURT USE ONLY**   ▲

Case Number:  2026cv31209


Division:         Courtroom:
</td></tr>
</table>

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICES, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.


If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: _____

_____
 Clerk of Court/Clerk

*Brian Williamson, Esq.*
Signature of Plaintiff

 2550 W. Union Hills Avenue, Suite 350-34, Phoenix, AZ 85027
Address of Plaintiff

C/O Brian Williamson, Esq.
_____

201-261-1700 / bwilliamson@callagylaw.com
_____
Plaintiff's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600   R10-13     DISTRICT COURT CIVIL SUMMONS

# EXHIBIT A-6

Acceptance of Service

| | |
|---|---|
| DENVER DISTRICT COURT<br>1437 Bannock Street<br>Denver, CO 80202<br>United States<br>(303) 606-2300 | ▲  COURT USE ONLY  ▲ |
| Plaintiff: **BOULDER VALLEY IOM LLC**<br><br><br>v.<br><br><br>Defendant: **ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD** | Case No: 2026CV31209<br><br>Division:<br><br>Courtroom: |
| Attorneys for Plaintiff:<br><br>*Brian A. Williamson (CO Bar No. 336547)<br>Callagy Law<br>2550 W. Union Hills Ave., Ste. 350-341<br>Phoenix, AZ 85027<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(201) 261-1700<br>(201) 549-8408 (facsimile)<br>bwilliamson@callagylaw.com | |

## ACCEPTANCE OF SERVICE

I declare under oath that I, the undersigned counsel, represent the Defendant, Rocky Mountain Hospital and Medical Service, Inc. D/B/A Anthem Blue Cross and Blue Shield, in this case, that I have received and accepted service on this 14th day of May, 2026, of the Summons and

1

329754227v1

a copy of the Complaint. This waiver of service shall not be construed as an admission by me of the truth of the allegations in the Complaint and I reserve the right to receive notices of settings and the right to respond and appear in this case.

It is further agreed that Defendants' time to answer, move, or otherwise respond to the Complaint shall be sixty (60) days from the date of this Acceptance of Service.

## **VERIFICATION**

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

<div style="margin-left:55%">

TROUTMAN PEPPER LOCKE, LLP
Attorney for Defendants

By:  */s/ Angie Shewan*
     Angie Shewan
     600 Peachtree Street NE
     Suite 3000
     Atlanta, GA 30308
     407-832-6002
     Angie.Shewan@troutman.com

</div>

329754227v1

# EXHIBIT A-7

Order to Show Cause

| DENVER DISTRICT COURT<br>Denver City and County Building<br>1437 Bannock St.<br>Denver, CO 80202 | |
|---|---|
| **Plaintiff(s) Boulder Valley Iom LLC**<br><br>**v.**<br><br>**Defendant(s) Rcymt Hosp And Medical Serv Inc** | DATE FILED<br>June 8, 2026 9:43 AM<br>CASE NUMBER: 2026CV31209<br><br>▲ COURT USE ONLY ▲ |
| | **Case Number: 2026CV31209**<br>**Courtroom:   275** |
| **ORDER TO SHOW CAUSE** | |

THIS MATTER comes before the Court *sua sponte.*

Plaintiff shall show cause within 35 days from the date of this Order as to why this case should not be dismissed for failure to comply with the Court's Delay Reduction Order Section A, Paragraph 1 dated April 8, 2026.

1. **Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

Failure to comply with this Order shall result in dismissal of the case without further notice to the parties.

DATED: June 8, 2026

BY THE COURT:

Kandace C. Gerdes
District Court Judge